# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 8, 2014 Session

## ANTONIO SANTIAL JONES v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-A-628     Monte Watkins, Judge**

**No. M2012-01548-CCA-R3-PC - Filed June 25, 2014**

The petitioner, Antonio Santial Jones, appeals the denial of his petition for post-conviction relief. The petitioner was convicted of second degree murder and is currently serving a sentence of twenty-two years in the Department of Correction. On appeal, he contends that trial counsel was ineffective for failing to supply the petitioner with discovery, only beginning preparation for trial the day before, failing to convey a plea offer to the petitioner, and ignoring the self-defense claim asserted by the petitioner. Following review of the record, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER, J., and JOE H. WALKER , III, Sp.J., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Antonio Santial Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History

The petitioner's second degree murder conviction arose from his shooting of the victim in the breezeway outside an apartment after a discussion about a vehicle. A complete recitation of the facts of the event can be found in this court's direct appeal opinion. *State v. Antonio Santial Jones*, No. M2008-01254-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 364, **2-29 (Tenn. Crim. App. May 10, 2010), *perm. app. denied*, (Tenn. Oct. 13, 2010).

Here, we include only a brief overview of those facts from the direct appeal as necessary for our review. The shooting occurred in the breezeway of an apartment complex where Ms. Ira Christian and Ms. Shanera Jones each had apartments. Ms. Christian had known the defendant for approximately three years, and he had a key to her apartment, although he did not actually live there. Mr. Christian also knew the victim. On this particular morning, Ms. Christian heard someone knock on her door, and the defendant came into her room and told her that the victim was at the door. Ms. Christian went outside and found the victim sitting in a chair in the breezeway. He asked Ms. Christian for money, but she refused. Ms. Christian knocked on her neighbor's, Ms. Jones', door to wake her up for an appointment, and the three had a brief conversation.

Afterwards, the defendant came outside and asked the victim if he owned a purple vehicle. The victim replied that he had previously owned one but had since sold it. The defendant began to walk away, but he turned and raised the right side of his shirt, revealing a handgun. The victim jumped from the chair and ran toward the defendant, and a scuffle ensued. The gun was fired at least one time, and the victim was wounded.

Ms. Christian ran into her apartment and locked the door. Shortly thereafter, when things were quiet, she opened the door and saw the victim coming toward her. She pulled him into her apartment and called police. The defendant had fled the premises in a white car. By the time police arrived, the victim had died. Although initially denying knowledge of the shooter and giving misleading information, both Ms. Christian and Ms. Jones later identified the defendant as the shooter. *Id*.

Based upon the foregoing, the petitioner was indicted for one count of first degree murder. Following a jury trial, he was convicted of the lesser included offense of second degree murder and sentenced to an effective sentence of twenty-two years in the Department of Correction. Following the denial of his motion for new trial, the petitioner filed a direct appeal with this court alleging that: (1) the evidence was insufficient to support the conviction; and (2) the testimony of two witnesses, Ms. Christian and Ms. Jones, should have been considered accomplice testimony, requiring independent corroboration. *Id*. at 1. After review, this court affirmed, and the Tennessee Supreme Court denied permission to appeal.

On September 26, 2011, the petitioner filed a timely pro se petition for post-conviction relief. In the petition, it was alleged that trial counsel was ineffective for: (1) failing to adequately conduct any meaningful pre-trial investigation; (2) failing to interview potential witnesses that would have been favorable to the defense; and (3) failing to adequately communicate with the petitioner in preparation for trial. The petitioner further alleged that trial counsel, during his representation of the petitioner, was involved in illegal activity which culminated in his pleading guilty to felony drug charges, that these illegal activities prevented

trial counsel from providing effective representation, and that trial counsel was under the influence of drugs during the trial.

An evidentiary hearing was held, at which the petitioner and an assistant district attorney general testified. The petitioner testified that trial counsel was hired by his family and that he met him for the first time at the jail for what the petitioner characterized as a "meet and greet." The petitioner stated that trial counsel "called him out" with another inmate and that trial counsel gave the other inmate an envelope, which, according to the petitioner, contained "Xanax," "weed," and "tops." The petitioner felt that trial counsel's real purpose of the meeting was just to deliver the drugs. After trial counsel left, the other inmate informed the petitioner that trial counsel could do the same for him. Two weeks later, trial counsel returned and brought the petitioner an envelope which contained "some pornographic photos, three boxes of tops, and thirty valium pills." According to the petitioner, there was no discussion of his case at either of these meetings.

The petitioner testified that, after he was moved to the justice center, he called trial counsel multiple times. The petitioner stated that he asked trial counsel about discovery and the case, but trial counsel said it would "come later down the road." Trial counsel allegedly told the petitioner that he would visit him, but he failed to do so. According to the petitioner, he did not see trial counsel for five to six months. The petitioner contacted his family to have them contact trial counsel. Trial counsel came to the jail, and the petitioner learned that his family had run into money problems. At that meeting, trial counsel told the petitioner that he was basically not going to do much until the money situation was resolved. According to the petitioner, trial counsel stated that he was not going to hire an investigator or give him discovery "until he [got] his money." The petitioner testified that trial counsel told him that he had looked at the paperwork and that he believed that Ms. Christian and Ms. Jones were lying.

The petitioner testified that he next saw trial counsel the day before trial. He testified that he saw trial counsel only four times and that the case was mainly discussed on the phone. During this meeting prior to trial, the petitioner asked trial counsel about an "11th hour" plea. The petitioner testified that trial counsel told him that no offers had been made by the State. However, following the trial, trial counsel informed him that there had been an offer for fifteen to eighteen years at 30%. The petitioner testified that trial counsel told him that, had he known how the trial would turn out, he would have advised the petitioner of the plea offer and urged him to accept it. However, trial counsel told him that he had believed he could win the case.

The petitioner testified that, to his knowledge, trial counsel had not interviewed any witnesses or done anything in preparation for the case. The petitioner informed trial counsel

that he wanted to pursue a self-defense strategy for his defense. Trial counsel advised the petitioner not to testify at trial. The petitioner contended that, had trial counsel properly investigated the case, he would have been able to pursue the theory of self-defense.

On cross-examination, the petitioner acknowledged that he had failed to report the "smuggling" into the jail he assisted trial counsel with. He said he failed to do so because he was stressed and "needed it." The petitioner also acknowledged that he had stood before the trial court and stated that he did not want to testify in the case. The petitioner further acknowledged that trial counsel had attacked the witnesses on the stand as being unreliable, getting them to admit that they lied to the police. He testified that he never told anyone about his problems with trial counsel because he was a first time offender and did not know how things worked. Finally, the petitioner admitted that there was no testimony supporting his theory of self-defense as each witness testified that the victim was unarmed. Rather, the only gun linked to the victim was later found in his car in the parking lot.

The State then called Deborah Housel, an assistant district attorney general who was involved in the petitioner's trial. She testified that, during the case, she spoke with trial counsel on several occasions. She believed trial counsel to be very familiar with the facts of the case, he had received discovery, and he had filed several motions. Ms. Housel saw nothing to indicate that trial counsel was not prepared for the trial. Nor did she recall any discussion whatsoever regarding self-defense, rather trial counsel seemed to be proceeding under an identity defense, which she acknowledged was the "key hurdle" for the State to establish the petitioner's identity as the shooter. She could not recall whether an offer had been made in the case, but she said that one usually would have been extended.

After hearing the evidence presented, the post-conviction court took the matter under advisement. Subsequently, the court issued a written order denying relief. The petitioner has timely appealed that denial.

**Analysis**

On appeal, the petitioner contends that the post-conviction court erroneously denied his petition because he was denied his right to the effective assistance of counsel. In order to obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103 (2010); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner must prove allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the

conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal defendant has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and Article I, Section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice to the defense. *Strickland*, 466 U.S. at 687-88. Failure to satisfy either prong results in the denial of relief. *Id*. at 697.

For deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms, despite a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 688-89. "In other words, the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The petitioner must prove that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. When reviewing trial counsel's performance for deficiency, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). However, "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Burns*, 6 S.W.3d at 462 (quoting *Strickland*, 466 U.S. at 691). "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful,

counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691. "Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed." *Baxter*, 523 S.W.2d at 932-33.

Prejudice in turn requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Strickland*, the Supreme Court noted that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. The court clarified that prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

A claim of ineffective assistance of counsel raises a mixed question of law and fact. *Burns*, 6 S.W.3d at 461; *Grindstaff*, 297 S.W.3d at 216. Consequently, this court reviews the trial court's factual findings de novo with a presumption of correctness unless the evidence preponderates against the trial court's factual findings. *Grindstaff*, 297 S.W.3d at 216. But the trial court's conclusions of law on the claim are reviewed under a purely de novo standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

On appeal, the petitioner contends that the post-conviction court erred in denying his petition. In support of his argument, the petitioner relies upon his own testimony at the hearing to establish the claims of ineffective assistance, stating that all of the allegations were uncontroverted because only the petitioner testified. He notes that he "unequivocally testified that he never received any discovery materials from trial counsel." He further argues that "[t]he record indicates that trial counsel only began trial preparation the day before trial and completely ignored the self defense claim of the [p]etitioner." He alleges that "uncontroverted testimony at the evidentiary hearing established that trial counsel failed to communicate to the [p]etitioner the State's offer of settlement." The petitioner asserts that "the record clearly demonstrated the failures and ineffective representation of trial counsel, . . . [a]nd these failures of trial counsel unquestionably had an adverse impact on the trial." We note, however, that the petitioner's argument contains little more than these bare assertions, with no specific argument advanced.

In its order denying post-conviction relief, the post-conviction court stated as follows:

A close review of the record and testimony presented reveals that counsel met with the defendant and informed him of the nature of the charges against him, the likelihood of and range of punishment, the potential witness's testimony, evidence against him, and the advantages and disadvantages of testifying on his own behalf. Furthermore, trial counsel's alleged participation in illegal activities has no bearing on Petitioner's conviction, nor was there any evidence introduced that trial counsel was under the influence of drugs during the trial.

Therefore, Petitioner has failed to demonstrate by clear and convincing evidence ineffective assistance of counsel in violation of a constitutional right to render his conviction and sentence void or voidable under the Post Conviction Relief Act. The Court does not find the petitioner's testimony to be credible. Accordingly, the Court finds that Petitioner has failed to show that he was prejudiced by counsel's allegedly deficient conduct. . . .

After review of the record, we conclude that nothing preponderates against the findings made by the post-conviction court. By his own assertion, the petitioner's argument is based solely upon his "uncontroverted" testimony regarding trial counsel's alleged deficient performance. However, the post-conviction court heard that testimony and clearly chose not to accredit it, finding the petitioner's testimony "not . . . to be credible." As has been noted on multiple occasions, it is not the province of this court to re-evaluate credibility determinations made by the finder of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Absent the petitioner's own testimony, we see little, if any, proof which would support the petitioner's contentions.

Moreover, as pointed out by the State, portions of the petitioner's own testimony contradict his assertions. As to his allegation that trial counsel only began preparing for the case the day before trial, the petitioner himself testified that they had previously discussed the case during multiple phone conversations and that they had met in person four times. Moreover, Assistant District Attorney General Housel testified that she had met with trial counsel about this case and noted that he was very familiar with the facts of case, had filed for and received discovery, and had represented the petitioner at several bond hearings. She saw nothing to indicate that trial counsel was not prepared to try the case before a jury. Again, absent the petitioner's bare allegation that trial counsel was not prepared, there is simply no proof in the record to support that conclusion. Additionally, the petitioner failed to put forth any evidence at the hearing which trial counsel might have discovered with more preparation, thereby precluding a finding of prejudice. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

The petitioner's claims regarding the alleged plea offer and the failure to pursue a self-defense strategy likewise must fail. Again, the petitioner put forth no proof, other than his own testimony, regarding these issues. He failed to establish that there was even a plea offer extended by the State. While General Housel stated that there usually was, there is nothing in this record to indicate such in this case. Moreover, discounting the petitioner's testimony, there is no proof that trial counsel failed to convey any offer which was made to the petitioner. With regard to self-defense, the record seems to indicate that the defense would have been in conflict with the proof presented at trial. Specifically, there was no testimony that the victim was armed. Rather it was to the contrary, namely that the only gun associated with the victim was found in his car.

As found by the post-conviction court, the record establishes that trial counsel was not deficient in his representation of the petitioner. Indeed, a reading of the direct appeal opinion indicates that trial counsel vigorously and extensively cross-examined the State's witnesses, even getting them to acknowledge lying to the police initially. Moreover, the petitioner was indicted for first degree murder, but convicted of the lesser included offense of second degree murder. Clearly, trial counsel gained the petitioner some advantage in his case. The petitioner's allegations are simply not established on this record, and he is entitled to no relief.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE

-8-